GERALD ELBIN, INC., Plaintiff-Appellant, *v.* WALTER R. SEEGREN, Defendant-Appellee.

Second District   No. 77-41

Opinion filed July 12, 1978.

Barry B. Kreisler, of Hollobow & Taslitz, of Chicago, for appellant.

Ellis E. Fuqua, of Fuqua, Winter & Associates, of Waukegan, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

The trial court dismissed the plaintiff's amended complaint for specific performance. Plaintiff appeals.

On November 14, 1972, Gerald Elbin, Inc., the plaintiff, an Illinois corporation (hereinafter Elbin), entered into a written contract with the defendant, Walter R. Seegren, for the purchase of certain business

property in Waukegan. Seegren was the beneficiary of a land trust, title to the property being in the Zion State Bank and Trust Company as trustee. It is alleged by Elbin that after making the offer to sell the property, and as an inducement for Elbin to buy, Seegren, the seller, orally offered to repurchase the property, at Elbin's option, at a set price for cash at the end of three years. A contract was then drafted by the parties and executed on October 14, 1972. Paragraph 10 of that contract reads as follows:

"10. It is further understood and agreed between the parties that in consideration of TEN AND NO/100s ($10.00) DOLLARS and other good and valuable consideration, that Purchaser shall have at his sole option the right to resell said real estate to Sellers Beneficiary, Walter R. Seegren, upon Sixty (60) Days notice at any time subsequent to the expiration of Three (3) Years from the date of the Closing of this transaction at the same price of ONE HUNDRED AND FIFTY THOUSAND DOLLARS ($150,000.00) and said Walter R. Seegren hereby agrees to so repurchase."

The sale was consummated by a closing on December 1, 1972, and the trustee's deed was issued by the Zion Bank conveying the property to the purchaser, Elbin, for the purchase price of $150,000.

Elbin also alleges that several times subsequent to closing Seegren orally acknowledged that he had promised to repurchase the property at Elbin's option after three years had passed.

Elbin performed all his obligations under the contract. Upon the expiration of three years from the date of closing, on December 2, 1974, Elbin advised Seegren in writing that he was exercising the option for repurchase contained in paragraph 10 of the contract with the seller, Seegren. Seegren refused to repurchase the property. This suit was filed by Elbin seeking specific performance of the repurchase option under the contract.

As indicated, no evidence was heard and the trial court dismissed the amended complaint. After the appeal was filed in this court, Elbin sold the property in question at a loss. He, therefore, prays that the decision of the trial court be reversed and that the cause be remanded for the ascertainment of damages suffered rather than specific performance.

There are three issues presented for our determination. The first is whether there was consideration for the repurchase agreement at the time of the execution of the contract; secondly, whether the terms of the repurchase agreement are sufficiently clear and definite to constitute an enforceable contract; and lastly, whether the repurchase agreement violated the statute of frauds. Ill. Rev. Stat. 1971, ch. 59, par. 2.

■■ As part of his argument that there was no consideration for the repurchase agreement, Seegren contends that, inasmuch as the title

to the property was in a land trust with the Zion Bank and not in Seegren, the November 14, 1972, contract was not enforceable because the Zion Bank did not sign it. Seegren further contends that even assuming the proper execution of the contract, the doctrine of merger bars enforcement of the repurchase agreement because it was omitted from the deed. We do not agree with either contention. It is readily apparent that there was consideration for the repurchase agreement. In addition to the $150,000 purchase price of the real estate set out in another paragraph of the contract, paragraph 10 specifically recited a separate consideration of $10 and other good and valuable consideration. Whether or not the contract might have been enforceable against Zion Bank if it had refused to perform is irrelevant. The instant suit is not against the Zion Bank but is against Seegren personally on the contract he knowingly entered into. Likewise, the doctrine of merger does not apply. As Elbin points out, the repurchase agreement could only be executed after the original sale. "Where the contract provides for other acts besides the conveyance, the contract remains in force after the delivery of the deed until it has been fully performed." (*Trapp v. Gordon* (1937), 366 Ill. 102, 110, 7 N.E.2d 869, 873.) In addition, in *Fitzpatrick v. Allied Contracting Co.* (1962), 24 Ill. 2d 448, 182 N.E.2d 183, the supreme court specifically held that a separate repurchase agreement which recited that it was part of the consideration for a sale was not merged into a later deed.

The next issue is whether the terms of the repurchase option contained in paragraph 10 are sufficiently clear to constitute an enforceable contract.

The first part of Seegren's argument in this regard is that the provision which allows Elbin to exercise this option "* * * upon Sixty (60) Days notice at any time subsequent to the expiration of Three (3) years from the date of Closing * * *" is indefinite. Seegren contends that there is no limitation as to when the option for repurchase may be exercised and therefore the provision is so vague as to be void.

■■ The law has long presumed that a contract which does not contain a time term must be exercised within a reasonable time. See *Ullsperger v. Meyer* (1905), 217 Ill. 262, 75 N.E. 482.

> "Where a time for performance is not specified, the law implies that the parties intended the contract to be performed within a reasonable time." (*Yoder v. Rock Island Bank* (1977), 47 Ill. App. 3d 486, 491, 362 N.E.2d 68, 72.)

In this regard, see also *Pel-Aire Builders, Inc. v. Jimenez* (1975), 30 Ill. App. 3d 270, 332 N.E.2d 519. Inasmuch as Elbin exercised his option the day after the three years expired, he clearly acted within a reasonable time.

■■ The second part of Seegren's argument is that, "it would be most unusual and even absurd that the parties would have an agreement

where the defendant would have to pay $150,000 in cash." With these conclusions we certainly do not agree. How Seegren was to raise the funds for the repurchase was of no importance to Elbin, either at the time of the contract or at the time he exercised the repurchase option. No financing contingency clause is contained in the repurchase portion of the contract and, as the repurchase clause specifically states: "* * * said Walter R. Seegren hereby agrees to so repurchase." We will assume that the omission of such a clause was deliberate on Seegren's part. We do not find the repurchase agreement to be either vague or uncertain. To the contrary, we hold it to be sufficiently clear to warrant an order of specific performance or the award of damages.

■■ We turn then to the issue of whether this agreement is in violation of the statute of frauds. In this regard Seegren again argues that the absence of a definite time within which the option is to be executed constitutes such vagueness as to bring the repurchase agreement within the statute. As we have found above, the repurchase option is to be exercised, if at all, within a reasonable length of time. We find that the statute of frauds is not a bar to the enforcement of the repurchase agreement.

■■ Seegren also contends that "part performance" will not remove a contract from the statute of frauds. First of all, we do not find that Elbin's action constituted merely "part performance." The pleadings clearly show that Elbin, in fact, fully performed all his obligations under the contract and that now he merely wishes to exercise an option which arises from that full performance. In our opinion Seegren obviously must meet performance with performance.

The problem presented at this juncture is what remedy is available to Elbin who, during the pendency of this appeal, has sold the premises in question at a loss. Obviously, since specific performance is no longer possible, Elbin should be allowed to recover his damages if he can prove them. Accordingly, we reverse the dismissal of the cause and remand it. The trial court is directed to grant leave for both parties to amend their pleadings and to conduct proceedings consistent with this opinion.

Reversed and remanded with instructions.

BOYLE and WOODWARD, JJ., concur.